UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CASE NO. 24-CR-47-DLB-CJS

UNITED STATES OF AMERICA                                                                    PLAINTIFF

V.           **UNITED STATES'S SENTENCING MEMORANDUM**

ROBERT MAXWELL WERNER                                                                  DEFENDANT

\* \* \* \* \*

On October 31, 2024, Robert Maxwell Werner (the "Defendant") pleaded guilty to a single count Information, charging him with Using a Minor to Engage in Sexually Explicit Conduct Outside the United States for the Purpose of Producing a Visual Depiction of that Conduct, in violation of 18 U.S.C. § 2251(c). [R. 8: Plea Agreement]. Specifically, the Defendant, while living in the Philippines between February 2021 and November 2021, came into contact with an individual (the "Facilitator") who had access to numerous minor males. The Facilitator would engage in sexual acts with these minors and have the minors engage in sexual acts together for foreign customers. The Facilitator would record and, at times, livestream these acts for the Defendant, who transferred the Facilitator and the minors money, which was used for basic necessities. The Defendant also paid the Facilitator for custom-created child sexual abuse material (CSAM) and multiple in-person

1

meetings with minor boys. The Defendant transported these videos and images into the United States when he returned in November 2021. *See* R. 8, at 2.

The Presentence Report calculates that the Defendant's guideline range is 360 months of imprisonment to life. Presentence Investigation Report ("PSR") ¶ 74. However, because the statutory maximum for the Defendant's crime is 360 months' imprisonment, the applicable guideline range is 360 months. The Defendant is also subject to a term of supervised release of not less than five years nor more than life. The United States submits that a sentence of 360 months of imprisonment, to be followed by a significant term of supervised release, is sufficient, but not greater than necessary to achieve the sentencing objectives of 18 U.S.C. §3553(a).

## 18 U.S.C. § 3553 AND THE APPROPRIATE SENTENCE

The United States Sentencing Guidelines are advisory, but they remain "the starting point and the initial benchmark" in sentencing. *Gail v. United States*, 552 U.S. 38, 49-50 (2007). The guidelines must be properly calculated and considered, but ultimately, the Court must craft a sentence that sufficiently accounts for the sentencing factors and objectives outlined in 18 U.S.C. § 3553(a). *United States v. Jackson*, 408 F.3d 301, 305 (6th Cir. 2005).

The factors to be considered under 18 U.S.C. § 3553(a) include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense; the need to promote respect for the law and afford adequate deterrence to criminal conduct; the need to protect the public from future crimes of the defendant; and the need to avoid unwarranted sentence disparities.

### A. Nature and Circumstances of the Offense

In February 2021, the Defendant traveled to the Philippines, where he came into contact with the Facilitator. The Defendant and the Facilitator communicated on an encrypted messaging application between at least July 27, 2021 and December 26, 2021; they sent over 12,900 messages during that time period. These messages revealed the Defendant's sexual interest in underage males, included the exchange of CSAM, showed the planning and narration of in-person sexual encounters with the Defendant and the minor boys, and confirmed the transfer of money (and purchase of other items such as food, beverages, and clothing) from the Defendant to the Facilitator.

For instance, on July 27, 2021, the Facilitator sent multiple Google Drive links to the Defendant with new and updated videos of minors engaging in sexually explicit conduct. The Defendant commented on the boys and which "UA" ("underage") boys he wanted to perform which sexual acts (and with whom). The Defendant complained about the bad angle of one video, because he could not see the Facilitator "ducking [sic] him." The next day, the Defendant sent pizza money in exchange for pictures. Throughout August, the Defendant sent money for sexually explicit videos and images, including of underage boys, often asking what underage boys the Facilitator had in his home at the time.[1] The Defendant referred to his collection as "daddies catalogue."

The Defendant and the Facilitator also began coordinating in-person sexual encounters with the boys. The Defendant engaged in sex acts four separate times in hotels

---

[1] The Facilitator had a rotating selection of boys at his house at any given time.

3

in late August and early September. Those encounters culminated in an illicit sex party, in which the Defendant rented a house with a pool for the boys and provided food and alcohol. The Facilitator sent a list of 19 names ("joiners"), with 11 of those listed as underage.[2] During the party, the Defendant narrated his various sexual encounters via message to the Facilitator, who was in another room staging the boys. For instance, the Defendant asked the facilitator which "UA" was available. After the marathon sex session, the Facilitator provided an accounting, which was based on the boys' performance. The "top performer" was 15 years old. After this party, the Defendant only requested videos and images, which were cheaper than in-person events.

The Defendant returned to the United States in November 2021 when his visa expired. He continued soliciting CSAM in exchange for money while traveling back to the United States and once he returned home. On December 3, 2021, he lamented losing the photos and videos he had in his messaging application. He sent the Facilitator some money and encouraged him to send more naked pictures of particular boys.

When the Defendant was interviewed by law enforcement in April 2024, he first minimized his conduct. He stated that he "fell prey" to the Facilitator and only sought companionship from the boys. Contrary to the evidence, the Defendant said he deleted the produced CSAM "the second" he got out of the Philippines. The Defendant progressively

---

[2] Although those 11 names list an age of 17, these are likely inflated ages. This list had to be provided to the rental property, so there is incentive to inflate ages given the age restrictions. Elsewhere in the chats, these "joiners" are identified with younger ages.

4

disclosed that he was aware of the boys' age and met in person for sexual acts five times; the youngest boy he spent the night with was 13 years old. PSR ¶¶ 17-19.

A substantial sentence is necessary to account for the egregious nature and circumstances of the Defendant's actions. 18 U.S.C. § 3553(a)(1).

### B. History and Characteristics of the Defendant

While this might be the Defendant's first sexual offense of his criminal history—and thus the first time he is being held accountable—this was not a one-time occurrence. Nor was the Defendant's crime one of accident or misunderstanding. The Defendant took advantage of multiple young boys over the course of several months and abused them in person on multiple occasions. In the chats, he recognized that the boys did not want to do what they were doing, and they were sometimes physically incapable of performing sexual acts. He nonetheless justified his actions by telling himself that he was providing essentials for the boys, who lived in desperate circumstances.

Although the Defendant has struggled with his mental health and substance abuse, neither excuses his criminal actions. He consciously, and intentionally, used his financial position to maintain control over the Facilitator and his boys. *See* PSR ¶ 12 ("U r our Queen Elsa"). And even if he acted opportunistically in the Philippines, where he had easier access to vulnerable victims, the Defendant clearly was acting out an underlying, pre-existing sexual interest in very young boys.

To the extent the Defendant seeks to lessen his responsibility by noting his own victimization as a child, *see* PSR ¶ 51, the United States does not dispute or minimize his reported trauma. However, studies and literature on this topic have not found any clear

5

causal link between experiencing child sexual abuse and perpetrating such abuse as an adult. It is clear, however, that the majority of victims of child sexual abuse do not become perpetrators themselves. *See, e.g.*, Lambie, Ian et al., "Resiliency in the victim-offender cycle in male sexual abuse," *Sex Abuse: A Journal of Research and Treatment* 14(1) (2002) at 43 ("The victim-offender cycle in male sexual abuse has been popularized as an explanation of why some males sexually offend. However, there are serious limitations to this explanation[.]").[3]

The Defendant's willingness to engage in repeated sexual abuse when given the opportunity, and his compulsive sexual interest in children, demonstrates his dangerous character.

### C. Other Sentencing Factors

A substantial sentence is also necessary "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A),(C). Producing child sexual abuse material is clearly not a victimless crime; by engaging in such

---

[3] *See also* Hall, R.C.W., "A Profile of Pedophilia: Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues," *Mayo Clinic Proceedings* 82(4) (2007) at 464 ("There is also legitimate concern regarding the validity of many of the self-reports of pedophiles who claim to have been abused as children themselves. These statements are often made in a legal or group treatment setting, in which pedophiles may be trying to mitigate their sentence or gain sympathy for their behavior."); Glasser, M. et al., "Cycle of child sexual abuse: links between being a victim and becoming a perpetrator," *The British Journal of Psychiatry* 179 (2001) at 488 (noting that "the data do not provide strong support for a cycle of sexual abuse encompassing a substantial proportion of male perpetrators"); *and* Briggs, F. & R. Hawkins, "A Comparison of the Childhood Experiences of Convicted Male Child Molesters and Men who were Sexually Abused in Childhood and Claimed to be Nonoffenders," *Child Abuse & Neglect* 20(3) (1996) at 230 (concluding that "sexual abuse at particular ages and frequency of abuse do not of themselves necessarily lead to an increased likelihood of perpetuating abuse across generations").

conduct, the Defendant has exposed each child victim to shame and humiliation. *See, e.g.*, *New York v. Ferber*, 458 U.S. 747, n.10 (1982) ("Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography."); *United States v. Miller*, 665 F.3d 114, 121 (5th Cir. 2011) ("And as long as there is a demand [for] images of child pornography, there is going to be an unending stream of child abuse of children who are forced into these roles.").

Here, for months, the Defendant victimized minors in the Philippines, through live-streaming of sexually explicit conduct, downloading of custom-created content, and in-person sexual activity. He used his financial position to prey on and gain access to vulnerable, homeless youth who were struggling to obtain basic needs such as food, clothing, and shelter. The consequences will stay with these victims throughout their entire life.[4]  Protecting the public from the Defendant and from experiencing what these powerless victims endured is essential.

Finally, a substantial sentence is needed "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). A guidelines sentence of 360 months' imprisonment

---

[4] Another factor courts are to consider when imposing a sentence is "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Unfortunately, thus far, FBI and Philippine law enforcement authorities have been unable to locate and obtain restitution requests or victim impact statements from the victims. PSR ¶¶ 22-23. However, the United States respectfully requests that the Court impose a mandatory assessment of $5,000 pursuant to the Justice for Victims of Trafficking Act (JVTA), *see* 18 U.S.C. § 3014, as well as a special assessment under the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, *see* 18 U.S.C. § 2259A(a)(3). *See* PSR ¶¶ 82-83.

would be a clear warning to others considering similar criminal conduct. "General deterrence is crucial in the child pornography context." *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010); *see also United States v. Bistline*, 665 F.3d 758, 767 (6th Cir. 2012) (reversing the district court for neglecting the importance of deterrence in a sentencing for possession of child pornography); *Ferber*, 458 U.S. at 760 ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for this material by imposing severe criminal penalties on persons . . . promoting the product."). Producers and collectors of child sexual abuse material may have a compulsion for this material, but they can still be deterred by law enforcement. Indeed, far too many offenders travel abroad to sexually abuse children, believing their criminal conduct to be outside the bounds of punishment or unlikely to be discovered. A substantial sentence will send a message to others who may travel abroad, gain access to vulnerable or at-risk children, and sexually exploit them. *See, e.g.*, *United States v. Widmer*, 511 F. App'x 506, 511-12 (6th Cir. 2013) (approving district court's determination that "sentence was necessary to 'send a signal to would-be offenders that receipt of child pornography carries significant consequences'").

## **CONCLUSION**

The United States respectfully requests the Court impose a guidelines sentence of 360 months imprisonment to be followed by a substantial term of supervised release, to enter an Order of Forfeiture regarding all of the items contained in the Forfeiture Allegation of the Information, and to impose a $100 special assessment pursuant to 18 U.S.C. § 3013,

a $5,000 special assessment pursuant to 18 U.S.C. § 3014, and a reasonable assessment pursuant to 18 U.S.C. § 2259A(a)(3).

        Respectfully Submitted,

        PAUL C. MCCAFFREY
        ACTING UNITED STATES ATTORNEY

By:   s/ Erin M. Roth
        Assistant United States Attorneys
        260 W. Vine Street, Suite 300
        Lexington, Kentucky 40507-1612
        (859) 685-4872
        Erin.Roth@usdoj.gov

        s/ Rachel L. Rothberg
        Trial Attorney, Department of Justice
        Child Exploitation and Obscenity Section
        1301 New York Ave NW, 11th Fl
        Washington, DC 20530
        (202) 603-9145
        Rachel.Rothberg@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

On February 26, 2025, I electronically filed this document through the ECF system, which will send notice of electronic filing to all counsel of record.

s/ Erin M. Roth<br>
Assistant United States Attorney